UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

FREDERICK HARVEY GRUMBLEY,

        Plaintiff,                      Case No. 2:11-cv-185

v.                                         Honorable R. Allan Edgar

STATE OF MICHIGAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed because Defendants are immune or Plaintiff fails to state a claim against them.

**Factual Allegations**

Plaintiff is incarcerated in the Newberry Correctional Facility. In his *pro se* complaint, he sues the State of Michigan, the Michigan Department of Corrections (MDOC), MDOC Director Patricia Caruso, Chaplain (unknown) Agee, Resident Unit Manager Kathleen Nelson, Assistant Deputy Warden Jim Young, Warden Mitch Perry, CFA Special Activities Coordinator Mike Martin and MDOC Grievance Specialist Sean Lockhart.

Plaintiff alleges that each religious group is given $150.00 annually from the prisoner benefit fund to spend on religious items. In April 2010, Jewish prisoners used the funds to purchase four prayer shawls (Tallis) and four Tzitzit undershirts from the Aleph Institute. Plaintiff asked Defendant Agee if he could use one of the prayer shawls during the Jewish services. Agee told Plaintiff that he only could use the shawl if Agee marked it "NCF Religious Property." Plaintiff responded that marking or labeling the shawl would constitute desecration of a religious item. Agree continued to deny Plaintiff use of the shawl and refused Plaintiff's requests to have one "signed out or assigned" to him or to purchase one of them. Defendant Agee returned the shawls to the Aleph Institute on December 17, 2010.

On December 14, 2010, Plaintiff wrote a letter to Defendant Young complaining that Agee violated his constitutional rights by denying him use of the prayer shawls. Three days later, Plaintiff filed a Step I grievance. According to the complaint, Defendant Nelson provided the following Step I response:

> Prisoner claims he was denied a shawl that was purchased by the PBF, that he felt he was entitled to use without it being marked as NCF religious property, and he claims that NCF is in violation of PD-03.03.130 "Humane Treatment and Conditions for Prisoners."

> Prisoner is correct in that Chaplain [A]gee would not issue the shawls to the Prisoners without them being marked NCF as they would disappear and were bought with PBF funds.
>
> Prisoners are allowed to purchase shawls in accordance with PD-05.03.150 "Religious [B]eliefs and [P]ractices of Prisoners" Attachment A, and in accordance to P[D]-04.07.112 "Prisoner Property".
>
> Prisoner[']s complaint that marking the shawls would desecrate them could not be substantiated via CFA [S]pecial Activities Coordinator Chaplain Martin and no violation of policy was found.
>
> Prisoner was not in agreement and wishes to go to step two with his grievance.

(Compl., ¶9, Page ID#4.)  Defendant Young reviewed and approved Nelson's response.  Defendant Perry denied Plaintiff's Step II grievance appeal for the reasons stated in the Step I response.  Plaintiff appealed to Step III.  In his Step III appeal, Plaintiff continued to argue that marking the shawls would desecrate them and offered biblical support for his position.  Nevertheless, on February 16, 2011, Plaintiff received a Step III grievance response from Defendant Lockhart upholding the lower decisions.

Plaintiff claims that he was denied the use of the prayer shawls from April 14, 2010 through December 17, 2010, in violation of the First Amendment Free Exercise Clause and the Fifth and Fourteenth Amendment Equal Protection Clause.  Plaintiff also asserts a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1.  For relief, Plaintiff seeks monetary damages from each of the Defendants.

## Discussion

I.  Immunity

As an initial matter, Plaintiff may not maintain a § 1983 action against the State of Michigan or the MDOC.  Regardless of the form of relief requested, the states and their departments

are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, Plaintiff's claims brought under § 1983 against Defendants State of Michigan and MDOC must be dismissed.

In addition, Defendants State of Michigan and MDOC are immune from Plaintiff's claims for monetary damages under the RLUIPA. *See Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA.").[1] Plaintiff seeks only monetary damages in this case; therefore, his claims under the RLUIPA against Defendants State of Michigan and MDOC must be dismissed.

---

[1] The Sixth Circuit has not ruled, however, on whether the RLUIPA authorizes suits for monetary damages against state officials in their individual capacities. *Heard v. Caruso*, 351 F. App'x 1, 13 n.5 (6th Cir. 2009). Plaintiff has not specified whether the remaining Defendants are sued in the official or individual capacities. Construing this *pro se* pleading liberally, the Court will assume that Plaintiff intended to sue them in both their official and individual capacities. To the extent Plaintiff sues the remaining Defendants in their official capacities, his claim under the RULIPA must be dismissed on immunity grounds. The Court will consider the merits of Plaintiff's claim with regard to the Defendants in their individual capacities.

> II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  **Defendant Caruso**

Plaintiff's only allegation against MDOC Director Caruso is that she "is directly responsible for the violations of [his] constitutional rights at the hands of the employees under her command . . ." (Compl., ¶ 29, Page ID#8.) Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft*, 129 S. Ct. at 1937; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Caruso engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

### B.  **Defendants Nelson, Young, Perry and Lockhart**

Plaintiff sues Defendants Nelson, Young, Perry and Lockhart because they denied his Step I grievance and his Step II and III grievance appeals. The Sixth Circuit held that where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of

administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Also, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (no constitutional right to a grievance procedure). Plaintiff, therefore, fails to state claim against Defendants Nelson, Young, Perry and Lockhart.

### C. **Defendants Agee and Martin**

Plaintiff contends that Defendant Agee violated the First Amendment and the Fourteenth Amendment Equal Protection Clause when he denied Plaintiff use of an unmarked prayer shawl. He further alleged that Defendant Martin should have known that the prayer shawl is a sacred garment that cannot be marked in any way, and, thus, contributed to the violation of his constitutional rights.

#### 1. First Amendment

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that

this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"). Assuming Plaintiff could satisfy the first two requirements of a First Amendment free exercise claim, the Court will consider whether Defendants' behavior infringed upon Plaintiff's religious practice.

When a prison regulation impinges upon an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Flagner*, 241 F.3d at 483. To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) (stating that "a regulation cannot be sustained where the logical connection between the regulation and the

asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

Plaintiff cannot show that Defendants' behavior infringed upon Plaintiff's practice of his Jewish faith because he was free to purchase his own prayer shawl, which would not have to be marked. Even if Agee's policy of marking the prayer shawls as prison property infringed upon Plaintiff's constitutional rights, the infringement was valid because marking the shawls as prison property reasonably related to legitimate penological interests. The prayer shawls at issue were purchased with money from the PBF and were intended to be shared by all Jewish prisoners at the facility. Under the circumstances, Defendant Agee had a legitimate governmental interest in marking or labeling the prayer shawls as communal prison property to prevent them from being intentionally or inadvertently converted to prisoners' personal property. Consequently, the first *Turner* factor is satisfied. The other three *Turner* factors also support the restriction. Most significantly, alternative means of exercising the right remained open to Plaintiff because he could purchase his own prayer shawl. Plaintiff, therefore, fails to state a claim under the First Amendment.

2. RLUIPA

The purpose of the RLUIPA is to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). However, "prison security is a compelling state interest" and "deference is due to institutional

officials' expertise in this area." *Id.* at 725 n.13. Accordingly, the RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* at 722. Further, in applying the RLUIPA, "courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries . . . and they must be satisfied that the Act's prescriptions are and will be administered neutrally among different faiths . . . ." *Id.* at 720 (internal citations omitted).

An inmate asserting a claim under the RLUIPA must first produce prima facie evidence demonstrating that his religious exercise was substantially burdened. *See* § 2000cc–2(b); *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010). An action of a prison official "will be classified as a substantial burden when that action forced an individual to choose between 'following the precepts of [his] religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Barhite*, 377 F. App'x at 511 (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (quoting *Sherbert v. Vernier*, 374 U.S. 398, 404 (1963), and *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981))). The government then bears the burden of persuasion to prove that any substantial burden on the inmate's exercise of his religious beliefs was "in furtherance of a compelling governmental interest" and imposition of the substantial burden on the inmate is "the least restrictive means of furthering that compelling governmental interest." §§ 2000cc–2(b), 2000cc–1(a)(1)–(2). The RLUIPA employs a more rigorous standard -- the least restrictive means of furthering a compelling governmental interest -- than the standard applied to First Amendment free exercise claims, a uniform rule having a reasonable relation to legitimate penological interests. *See Cutter*, 544 U .S. at 712.

Plaintiff cannot demonstrate that Defendants placed a substantial burden on his religious exercise. The communal prayer shawls were available to all Jewish prisoners, including Plaintiff. To the extent Plaintiff believed that marking or labeling the shawls constituted desecration of a religious object, he was free to purchase and possess his own prayer shawl, which would not have to be marked. Moreover, marking the communal prayer shawls to prevent them from getting lost or stolen was entirely consistent with the institution's need to maintain order and security. Plaintiff, therefore, fails to demonstrate entitlement to relief under the RLUIPA.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Plaintiff generally asserts that he was discriminated against because of his religious beliefs, but fails to provide a factual basis for his claim. For example, Plaintiff does not allege how he is being treated differently from other similarly situated Jewish prisoners or how Jewish prisoners are being treated differently from other religious groups. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 129 S. Ct. at 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Because the complaint fails to allege a plausible claim of religious discrimination, Plaintiff's equal protection claim must fail.

4. State Law

To the extent Plaintiff claims that Agee's conduct violated MDOC policy, the alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive

does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because Defendants State of Michigan and MDOC are immune and Plaintiff fails to state a claim against the remaining Defendants.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  8/4/2011                    */s/ R. Allan Edgar*
                                    R. Allan Edgar
                                    United States District Judge